UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION
www.flsb.uscourts.gov

IN RE

TRIGEANT HOLDINGS, LTD.,                             CASE NO. 14-29027-EPK

    Debtor.                                                            CHAPTER 11
_____/

**BTB REFINING, LLC'S MOTION FOR RELIEF FROM AUTOMATIC STAY**

    BTB Refining, LLC ("**BTB**"), the first position secured creditor of the Debtor, Trigeant Holdings, Ltd. ("**Debtor**" or "**Holdings**"), moves for an order pursuant to 11 U.S.C. § 362(d)(1) and Fed.R.Bankr.P. 4001 lifting the automatic stay (1) to permit BTB to continue its action (the "**Maryland Action**") against Holdings and Trigeant, LLC ("**TLLC**") pending in the Circuit Court for Montgomery County, Maryland (the "**Maryland Court**"), including obtaining a ruling on pending summary judgment motions on which the Maryland Court was prepared to rule; and (2) assuming the Maryland Court grants judgment in BTB's favor, to permit BTB to exercise such remedies as are appropriate consistent with the Maryland Court's ruling.

**Facts**

    1.    BTB is the largest creditor in this case. It holds a promissory note against the Debtor's subsidiary Trigeant, Ltd. ("**Trigeant**"), with a past due, defaulted balance of $22,565,194 plus interest, costs and attorneys' fees.[1] This Debtor, Holdings, owns 99% of Trigeant and 100% of TLLC,[2] which is the general partner of Trigeant (Holdings, TLLC and Trigeant may be referred to as the "**Trigeant Entities**").

---

[1] Although the Debtor has pledged its property to secure this debt, the Debtor is not itself an obligor on the loan and accordingly this Motion does not attach the "Indebtedness Worksheet" described in the Court's Guidelines for Motions for Relief from the Automatic Stay.

[2] TLLC filed a Chapter 11 petition simultaneously with Holdings, Case No. 14-29030-EPK.

2. BTB's interests in the Trigeant Entities arise out of a loan transaction that was executed in 2006 (the "**Loan Transaction**"). In the fall of 2006, Trigeant borrowed approximately $22 million from American Capital Strategies, Ltd. ("**AmCap**"). As part of the Loan Transaction, among the many documents executed to consummate the loan ("**Loan Documents**"), both Holdings and TLLC executed a Pledge Agreement by which they pledged to AmCap a security interest in all of their ownership interests in Trigeant. The security interest secured all of Trigeant's obligations in connection with the Loan Transaction.

3. In the summer of 2007, Trigeant defaulted on its obligations under the Loan Transaction, and AmCap commenced foreclosure proceedings. In December 2007, before AmCap proceeded with a foreclosure sale, BTB acquired all of AmCap's rights under the Loan Transaction through an Assignment and Acceptance Agreement. As a result, BTB now holds all of AmCap's rights in connection with the Loan Transaction, including all rights against Holdings and TLLC under the Pledge Agreement.

4. As this Court is aware from Trigeant's prior bankruptcy filing, which was filed on November 27, 2013 and dismissed on April 9, 2014, BTB foreclosed on Trigeant's property in early 2008. Thereafter, one of Trigeant's creditor's, PDVSA Petroleo, S.A. ("**PDVSA**"), filed an action in federal district court (the "**PDVSA Action**") alleging that the foreclosure of the real property was a fraudulent transfer. The district court determined that the real property foreclosure sale was a fraudulent transfer, but that BTB still held a valid lien on Trigeant's property, a refinery located in Corpus Christi, Texas (the "**Refinery**"). The district court avoided the foreclosure sale, reinstated the Loan Documents, and returned BTB and the Trigeant entities to the positions they were in immediately before the foreclosure sale. An appeal of the PDVSA Action was subsequently filed, and ultimately dismissed.

5. The defaults under the Loan Documents continue to this date.

6. Upon an event of default, the Pledge Agreement gave AmCap (and now its assignee, BTB) the following rights:

- The right to all of TLLC and Holdings' voting and other consensual rights to Trigeant, including the right to receive and hold dividends and interest payments;

- The right to notify each debtor of Trigeant to make payments directly to AmCap;

- The option to exercise all rights of conversion, exchange, subscription, or any other rights or privileges or options pertaining to TLLC and Holdings' shares in Trigeant;

- The rights to have any dividends, distributions, interest and other payments made by Trigeant to be segregated, held in trust, and paid over to AmCap;

- The right to execute agreements, instruments, or other documents in TLLC and Holdings' name and to file such documents in any appropriate filing office, including the filing of financing statements;

- The right to act as TLLC and Holdings' attorney-in-fact and proxy to take any action and to execute any instrument that AmCap may deem necessary to accomplish the purposes of the Pledge Agreement;

- The right to perform all obligations contained in the Pledge Agreement on behalf of TLLC and Holdings if they fail to perform such obligations themselves, and the right to recover expenses incurred in connection with the performance of such obligations;

- The right to transfer or register into AmCap's name any or all of the Pledged Collateral, or to exchange TLLC and Holdings' pledged certificates or instruments for other certificates or instruments of smaller or larger denominations;

- The right to sell all or any part of the Pledged Collateral in the manners authorized pursuant to the Pledge Agreement and Maryland law;

- The right to exercise, with respect to the Pledged Collateral, all rights and remedies of a secured party on default under the Maryland Uniform Commercial Code;

- The right to apply any cash held as Pledged Collateral or realized from the Pledged Collateral against all or any part of Trigeant's obligations under the Credit Agreement.

7. As a result, BTB filed the Maryland Action to obtain a declaratory judgment that it was entitled to exercise the foregoing rights. The Maryland Action was filed on July 3, 2013.

8. BTB filed a motion for summary judgment ("**Summary Judgment Motion**") in the Maryland Action on February 11, 2014. After the Summary Judgment Motion was fully briefed, the Maryland Court held a status conference hearing on August 20, 2014, at which the court announced that it was prepared to rule on the summary judgment motion. BTB attaches and incorporates by reference its *Plaintiffs' Motion for Summary Judgment* filed in the Maryland Action (Exhibit "A").

9. In an apparent attempt to buy time before the Maryland Court issued its ruling, Holdings and TLLC's counsel pointed out to the judge that BTB is an involuntary debtor in a case before this Court (In re BTB Refining, Ltd., Case No. 14-26919-EPK; this highly contested involuntary filing was orchestrated by Sargeant Trading, Ltd., an affiliate of the Trigeant Entities) and requested additional time to brief whether the automatic stay in the BTB involuntary case prevented the Maryland Court from ruling on BTB's motion. The Maryland court asked the parties to submit papers addressed to this limited issue by 4:00pm, Monday, August 25, 2014.

10. On the afternoon of August 25, after BTB filed its brief demonstrating the Maryland Court's ability to proceed unimpeded by the automatic stay, Holdings and TLLC filed a two-sentence brief acknowledging that the automatic stay did not affect the continued litigation of the Maryland Action commenced by BTB. Only minutes later, Holdings and TLLC filed voluntary Chapter 11 petitions in this Court and filed a Suggestion of Bankruptcy in the Maryland Action.

11. During the course of the prior Trigeant bankruptcy, the Trigeant Entities proved entirely unfit to protect and preserve the value of Trigeant's assets. Trigeant had no business operations, allowed the Refinery to go into disuse, and incurred hundreds of thousands of dollars of administrative expense obligations to related entities under the control of the Trigeant entities' ultimate principal, Harry Sargeant, Jr., some of which now appear as unpaid debts in this bankruptcy case.

## Discussion

12. BTB seeks relief from the automatic stay to proceed with the Maryland Action, in order to obtain a determination of BTB's entitlement to exercise its rights under the Pledge Agreement against the assets pledged by Holdings and TLLC. In the event the Maryland Action results in a determination in BTB's favor, BTB further seeks stay relief to exercise its rights under the Pledge Agreement.

13. Under 11 U.S.C. § 362(d)(1) stay relief may be granted "for cause." The Bankruptcy Code does not define "cause," and courts generally must determine such motions on a case-by-case basis. *See, e.g.*, In re Makarewicz, 121 B.R. 262, 265 (Bankr. S.D. Fla. 1990). In this district,

> The test to determine whether the automatic stay should be lifted to allow continuation of a pending lawsuit is whether
> a) Any 'great prejudice' to either the bankrupt estate or the debtor will result from continuation of a civil suit,
> b) the hardship to the [non-bankrupt] by maintenance of the stay considerably outweighs the hardship of the debtor, and
> c) the creditor has a probability of prevailing on the merits of his case.

Id. at 265; *see also* In re Mack, 347 B.R. 911 (Bankr. M.D. Fla. 2006), *aff'd*, 2007 WL 1222575 (M.D. Fla. 2007). Indeed, the legislative history of § 362 recognizes that allowing litigation to proceed in its original forum is often an appropriate reason to grant stay relief:

5

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties in their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

S.Rep. No. 989, 95th Cong., 2d Sess. 50, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836.

14.   In applying a "totality of the circumstances" test for determining whether to permit state court litigation to proceed, the court in Mack found that the debtor's lack of good faith was a factor to consider in granting stay relief. Specifically, the court noted that "[t]he Debtor's primary purposes in filing this bankruptcy case, based upon the timing and the circumstances of the filing, was to frustrate the Movants and delay the [state court] litigation." Mack, 347 B.R. 911, 914.

15.   Here, the Maryland Court had announced its intention to rule on pending summary judgment motions when these Chapter 11 petitions were filed. The timing and circumstances make it self-evident that the primary purpose of these bankruptcy filings was, as in Mack, to frustrate BTB's enforcement of its rights, delay the state court litigation, and avoid a determination of BTB's rights under the Pledge Agreement. Accordingly, stay relief should be granted to allow the Maryland Court to proceed with a determination of the declaratory judgment action that has pending in that court for more than a year.

16.   Moreover, in the event the Maryland Court determines that BTB is entitled to exercise its rights under the Pledge Agreement, stay relief should further be granted to permit BTB to exercise its remedies. The underlying loan has been in default for years, and the Loan Documents, including the Pledge Agreement, grant BTB extensive rights to protect its interests in the event of default, including without limitation the right to vote all of Holdings and TLLC's interests in Trigeant, the right to receive all dividends or distributions due from Trigeant, and the right to exercise all rights and remedies of a secured party with respect to the Pledged Collateral.

The Debtor has not, cannot, and will not provide adequate protection of the interests granted to BTB under the Pledge Agreement, and accordingly stay relief should be granted.

**WHEREFORE**, BTB moves for an order lifting the automatic stay to (1) permit BTB to continue the Maryland Action against Holdings and TLLC; and (2) assuming the Maryland Court grants judgment in BTB's favor, exercise such remedies are appropriate consistent with the Maryland Court's ruling.

KOZYAK TROPIN & THROCKMORTON LLP
Counsel for BTB Refining, LLC
2525 Ponce de Leon, 9th Floor
Coral Gables, FL 33134
Tel:    (305) 372-1800
Fax:   (305) 372-3508

By:   /s/Charles W. Throckmorton
        Charles W. Throckmorton, Esq.
        Florida Bar No. 286192
        cwt@kttlaw.com
        David L. Rosendorf
        Florida Bar No. 996823
        dlr@kttlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via the Court's CM/ECF notification to those parties who are registered CM/ECF participants in this case on this 2nd day of September, 2014.

By:   /s/Charles W. Throckmorton
        Charles W. Throckmorton

356624.1