

**ORDERED in the Southern District of Florida on January 16, 2015.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:                                                      Case No. 14-29027-EPK

**TRIGEANT HOLDINGS, LTD.,** *et al.,*                     **(Jointly Administered)**
                                                            **Chapter 11**

    **Debtor.**

_____/

**ORDER SUSTAINING JOINT OBJECTION**
**TO CLAIM OF PDVSA PETRÓLEO, S.A.**

THIS MATTER came before the Court for hearing on December 18, 2014 upon the

*Joint Objection to Claim of PDVSA Petróleos, S.A.* [sic] [ECF No. 168] (the "Joint

Objection") filed by (i) Trigeant Holdings, Ltd., Trigeant, LLC, and Trigeant, Ltd. (together,

the "Debtors"), and (ii) Harry Sargeant, II, Daniel Sargeant, and James Sargeant (together,

the "Consenting Owners," and with the Debtors, collectively, the "Objectors").  The

Objectors ask the Court to disallow that portion of the claim filed by PDVSA Petróleo, S.A.

("PDVSA") representing interest accruing after entry of a judgment confirming the

underlying arbitration award on the grounds that such portion as calculated exceeds the

statutory maximum rate set by 28 U.S.C. § 1961.[1]  PDVSA filed its *Response of PDVSA Petróleo, S.A. to the Joint Objection to Claim* [ECF No. 260] (the "Response"), arguing that (a) the 18% post-judgment interest rate reflected in its proof of claim represents a specific and valid award by the United States District Court, (b) the Objectors previously waived the right to object to PDVSA's claimed 18% post-judgment interest rate, (c) the Objectors should be prohibited from raising their objections under the theory of judicial estoppel as a result of contrary positions they allegedly took in prior litigation, (d) PDVSA is due post-petition interest on its claim under 11 U.S.C. § 506(b), and (e) the Objectors should not be allowed to reserve the right to raise other objections to the PDVSA claim.  BTB Refining, LLC ("BTB") filed a joinder in the Response of PDVSA [ECF No. 262].  The Objectors replied to PDVSA with the *Joint Memorandum of Law in Support of Joint Objection to Claim of PDVSA Petróleos S.A.* [sic] [ECF No. 261] (the "Joint Memorandum"), elaborating on the bases for the Joint Objection.  At the hearing on December 18, 2014, the Court heard oral argument on the Joint Objection, the Response, and the Joint Memorandum.  The Court now sustains the Joint Objection for the reasons stated below.

## STATEMENT OF FACTS

In 2002 and 2003, PDVSA and Trigeant, Ltd. entered into two similar contracts whereby PDVSA agreed to supply Trigeant, Ltd. with crude oil at a stated price.  Each contract incorporated certain General Conditions, which included the following clause:[2] "Any payment not received by [PDVSA] on its due date shall draw interest at the rate of twelve (12) per cent per annum.  Furthermore, there shall be an additional administrative

---

[1] The claim was filed as claim no. 8 in the case of Trigeant, Ltd. and claim no. 6 in the case of Trigeant Holdings, Ltd.

[2] No party filed a complete copy of the General Conditions.  The Court's findings with regard to the content of the contracts are based on undisputed facts.

handling and collection charge amount of six (6) per cent per annum.  All of the above shall be calculated on a year of three hundred and sixty (360) days."  In other words, the parties agreed that if Trigeant, Ltd. defaulted on its payment obligations to PDVSA, it would owe PDVSA the unpaid sum plus 18% per annum.

The contracts were governed by the laws of the Republic of Venezuela and any disputes were subject to arbitration in accordance with the Commercial Arbitration Rules of the International Chamber of Commerce.  As far as can be ascertained from the evidence, the contracts made no provision for judicial confirmation of arbitral awards.  In particular, the contracts included no language explicitly addressing the rate of interest to be applied after entry of a judgment confirming an arbitral award.

PDVSA delivered crude oil under the contracts.  The parties failed to perform contractual obligations to mutual satisfaction.  As a result of alleged defaults, Trigeant, Ltd. and PDVSA entered into arbitration.

On September 24, 2008, the International Court of Arbitration ("ICA") issued a final award in favor of PDVSA and against Trigeant, Ltd. (the "Final Award") in the amount of approximately $35.1 million, comprising principal in the amount of about $17.8 million, interest in the amount of about $16.6 million at the rate of 18% per annum through the date of the award, and certain costs.  The ICA also awarded future interest at the rate of "18% per annum . . . to the date of payment."  During arbitration, the parties disputed the appropriate rate of interest to be applied to the arbitral award.  However, it does not appear that the parties argued, or that the arbitration panel considered, what rate of interest might apply to a judgment confirming the arbitral award.  The Final Award issued by the ICA does not explicitly address the rate of interest that would apply after entry of a confirmation judgment.

Trigeant, Ltd. did not pay the arbitration award.  PDVSA filed an application to confirm the Final Award in the United States District Court for the Southern District of Florida.  On November 5, 2009, the District Court entered judgment confirming the arbitration award (the "Confirmation Judgment"), stating that "final judgment is hereby entered in favor of Plaintiff PDVSA Petroleo S.A. for the amount stated in the September 24, 2008, Final Arbitral Award."  There is no evidence before this Court to suggest that the parties argued the issue of post-judgment interest to the District Court.  The Confirmation Judgment does not state what rate of interest applies after its entry.  The Confirmation Judgment was not appealed and is now final.

Following the issuance of the Confirmation Judgment, the parties engaged in significant litigation in which the amount of PDVSA's judgment was arguably relevant.

In 2009, prior to entry of the Confirmation Judgment, PDVSA brought suit against Trigeant, Ltd. and BTB in the United States District Court for the Southern District of Texas.  BTB, as the holder of a mortgage lien on the oil refinery in Nueces County, Texas, previously owned by Trigeant, Ltd., had foreclosed its mortgage, thereby obtaining title to the oil refinery.  In the Texas litigation, among other things, PDVSA sought reversal of the foreclosure sale of the oil refinery on state law theories of fraudulent transfer.  The litigation in Texas continued after entry of the Confirmation Judgment.  In the Texas litigation, several parties including Trigeant, Ltd. stipulated to the fact that Trigeant, Ltd. owed PDVSA some $47 million.  It is not disputed that this amount included interest at a rate of 18% per annum both before and after entry of the Confirmation Judgment.  In its ruling, the Texas District Court made a finding regarding the amount of the PDVSA claim consistent with the parties' agreement.

The Texas District Court entered judgment avoiding the foreclosure sale, re-lodging title to the refinery in Trigeant, Ltd. subject to the liens of BTB and PDVSA.  The Texas

4

District Court avoided the foreclosure based on a theory of actual fraud and also on a theory of constructive fraud. A finding with regard to the amount of the PDVSA claim is not necessary to the ruling based on actual fraud. The ruling based on constructive fraud required the Texas District Court to find that Trigeant, Ltd. was insolvent at the relevant time. But the defendants, including BTB, did not contest that Trigeant, Ltd. was insolvent. Thus, in spite of the Texas District Court's finding as to the amount of the PDVSA claim, the Texas District Court was not called upon to use that claim in calculating Trigeant, Ltd.'s liabilities for purposes of a solvency analysis.[3] BTB appealed the Texas District Court judgment to the Fifth Circuit Court of Appeals.

In December 2013, Trigeant, Ltd. filed a chapter 11 petition with this Court. In its schedules of assets and liabilities in that prior case, Trigeant, Ltd. listed a debt owed to PDVSA in the amount of $55.8 million, thereafter amended to $52.8 million. An officer of Trigeant, Ltd. later confirmed this amount under oath in a deposition. It is not disputed that this figure included interest at the rate of 18% per annum after entry of the Confirmation Judgment.

The first bankruptcy of Trigeant, Ltd. was dismissed on April 9, 2014, with prejudice to the filing of another petition in bankruptcy until after issuance of the mandate in the pending appeal before the Fifth Circuit Court of Appeals. After dismissal of the first Trigeant, Ltd. bankruptcy, BTB and PDVSA reached a settlement that involved dismissal of the Fifth Circuit appeal and the potential transfer of the secured claims of PDVSA to BTB. This settlement has two important impacts in the present case. First, the settlement effectively confirmed in Trigeant, Ltd. title to the oil refinery. Second, the settlement

---

[3] Even if the Texas District Court had been called on to calculate the solvency of Trigeant, Ltd., that court found that the refinery was worth not more than $40 million and the total of all secured claims greatly exceeded that value. Thus, even ignoring the interest rate issue presented here, Trigeant, Ltd. would have been found insolvent at the relevant time.

empowered BTB to use the claims owned by PDVSA, secured by liens on the oil refinery, in BTB's efforts to regain title to the oil refinery through foreclosure or through credit bid in a second bankruptcy of Trigeant, Ltd.

On August 25, 2014, Trigeant, Ltd. filed a second bankruptcy, the present case, joined by the other Debtors. In this case, Trigeant, Ltd. scheduled PDVSA with a claim in the amount of $55.3 million, which again appears to include interest at the rate of 18% per annum after the Confirmation Judgment. This time the PDVSA claim was listed as disputed.

The Debtors filed a joint plan of reorganization providing for the sale of the oil refinery for a stated price of $100 million. The agreements entered into by the Debtors and the Consenting Owners in connection with the proposed sale severely limit the Debtors' ability to negotiate with alternative purchasers and include disincentives for the Consenting Owners to support an alternative transaction without regard to the value of the competing bid.

BTB objected to the sale process proposed by the Debtors from the inception of this case. In December, 2014, the Court terminated the Debtors' exclusive right to propose a plan of reorganization, thereby permitting BTB to file its own competing plan. The plan filed by BTB proposes a sale of the oil refinery to an affiliate of BTB for a stated price of $105 million. BTB intends to rely in part on the PDVSA secured claim to credit bid for the Debtors' assets. Thus, the allowed amount of the PDVSA claim has a direct impact on BTB's efforts in this case.

**ARGUMENTS PRESENTED**

The Objectors assert that PDVSA erred in calculating its claim because federal law requires a specific, lower, rate of interest applicable to the period after entry of the

6

Confirmation Judgment.  28 U.S.C. § 1961 provides that judgments in the federal courts carry a mandatory interest rate "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding" the entry of judgment.  For the Confirmation Judgment, the applicable interest rate would be 0.39%.  If this rate is applied to the period after entry of the Confirmation Judgment, PDVSA would have a claim of about $40 million rather than about $55 million.

In response, PDVSA argues that both the Final Award and the Confirmation Judgment require payment of interest at the rate of 18% per annum until the award is paid, and the award has not been paid.  PDVSA also argues that the Objectors' waived their right to challenge the 18% interest rate in prior litigation or, alternatively, should be precluded from challenging that interest rate under the doctrine of judicial estoppel in light of positions taken by the Objectors in prior litigation.  PDVSA also argues that the Objectors' attempt to reserve the right to bring additional objections to its claim is improper, that the present Objection should be overruled, and that PDVSA's claim should be allowed on a final basis.


## ANALYSIS

A judgment of a United States District Court confirming an arbitral award is like any other judgment entered by the federal trial court.  9 U.S.C. § 13; *Parsons & Whittemore Alabama Mach. & Servs. Corp. v. Yargin Construction Co.*, 744 F.2d 1482, 1484 (11th Cir. 1984).  Any contract or agreement on which the arbitral award was based is merged in the judgment.  *Tricon Energy Ltd. v. Vinamar Intern., Ltd.*, 718 F.3d 448, 457 (5th Cir. 2013); *FCS Advisors, Inc. v. Fair Finance Co.*, 605 F.3d 144, 148 (2nd Cir. 2010); *Soc'y of Lloyd's v.*

*Reinhart*, 402 F.3d 982, 1004 (10th Cir. 2005). The plaintiff looks only to the judgment to enforce its collection rights against the defendant.

With limited enumerated exceptions not applicable here, federal statute provides for a uniform interest rate applicable to federal judgments. 28 U.S.C. § 1961. The Objectors argue that this ends the analysis, that section 1961 governs in all cases in spite of a contrary agreement of the parties, in spite of a contrary ruling of an arbitration panel, and in spite of what a District Court may award consistent with the parties' agreement and the arbitration award. For this proposition the Objectors point to the 11th Circuit's decision in *Parsons & Whittemore*, 744 F.2d at 1484, which they cite for the proposition that the statutory interest rate applies to judgments confirming arbitral awards without exception. Yet the 11th Circuit does not say this in *Parsons & Whittemore*. That decision stands only for the proposition that the statutory provision applies to judgments of the district court confirming an arbitral award. *Id.* at 1484. It does not stand for the proposition that the statute provides the *sole* potential interest rate applicable after entry of such judgments.

Courts of Appeal in the Second, Fifth, Seventh, Ninth, and Tenth Circuits have held that the parties may override the general rule on merger, and agree to an alternate interest rate for the period after entry of judgment, so long as this is done in an explicit and unequivocal manner. *Tricon*, 718 F.3d at 457 (5th Cir. 2013); *Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1276 (10th Cir. 2010); *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 101 (2nd Cir. 2004); *Cent. States, Se. & Sw. Areas Pension Fund v. Bomar Nat'l, Inc.*, 253 F.3d 1011, 1020 (7th Cir. 2001); *Citicorp Real Estate v. Smith,* 155 F.3d 1097, 1107-08 (9th Cir. 1998). It does not appear that any Circuit Court of Appeals to consider this issue has ruled that section 1961 is the only basis for calculating post-judgment interest.

Case law permitting the parties to contract around section 1961 is fairly uniform in its approach. The parties' agreement must include "language clearly, unambiguously, and unequivocally stating the parties' intent to bypass § 1961." *Tricon*, 718 F.3d at 458 (quoting *Newmont*, 615 F.3d at 1277); *cf. Reinhart*, 402 F.3d at 1004. As the parties' intent is a question of fact, an arbitration panel may consider whether the parties intended a particular rate of interest to apply after a confirmation judgment and include appropriate relief in the award using, again, unambiguous language making it clear that the merger doctrine is not to apply. *Tricon*, 718 F.3d at 457-459; *Newmont*, 615 F.3d at 1277. When an arbitral award explicitly awards interest at a particular rate after judgment, such an award is "entitled to almost absolute deference." *Tricon*, 718 F.3d at 458.

In determining whether the parties have agreed as to, or an arbitration panel has awarded, interest at a particular rate after entry of a confirmation judgment, the intent that the merger doctrine not apply must be obvious from the language of the agreement and the award. Generalized language – such as the phrase "until paid" – is routinely held not sufficient to overcome the general rule that section 1961 applies. *See, e.g.*, *Tricon*, 718 F.3d at 459-460; *Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 794 (10th Cir. 2009); *Westinghouse*, 371 F.3d at 102; *Aboulhosn v. Merrill Lynch, Pierce, Fenner & Smith Inc. et al.*, 940 F. Supp.2d 1203, 1228 (C.D. Cal. 2013); *Jack Henry & Assoc., Inc. v. BSC, Inc.*, 753 F.Supp.2d 665, 670 (E.D. Ky. 2010). The Fifth Circuit has gone so far to insist that the arbitral award use the phrase "postjudgment interest." *Tricon*, 718 F.3d at 460. While the phrase "postjudgment interest" is so plain as to avoid dispute, this Court can imagine other language that would permit an arbitration panel to conclude that the parties intended a particular interest rate to apply after entry of a confirmation judgment. It does not appear that any special words should be required to permit deviation from section 1961, but an

unquestionable reference to the potential for a future confirmation judgment and the imposition of a specific interest rate thereafter must appear in the text.

While it is legally possible for the PDVSA claim to have the benefit of a post-judgment interest rate other than that provided by section 1961, there is no evidence here to support such a claim.  Insofar as the evidence shows, the governing contracts did not explicitly provide for post-judgment interest.  While the parties apparently litigated the issue of the interest rate applicable to the arbitral award, they did not specifically address what rate might apply after a confirmation judgment.  The Final Award does not plainly award interest at any specified rate after entry of a confirmation judgment; indeed, it makes no reference to such a judgment.  The Confirmation Judgment does not in any way address the potential for a post-judgment rate other than the statutory rate.  There is nothing surprising about this as the issue was not addressed in the relevant contracts or by the arbitration panel, is not mentioned in the Final Award, and was appropriately not brought to the attention of the District Court.  The Final Award did not award, and the District Court did not confirm, any rate of interest after entry of the Confirmation Judgment other than that provided for by 28 U.S.C. § 1961.

PDVSA argues that the Objectors waived the right to question PDVSA's right to 18% post-judgment interest because they failed to challenge the Confirmation Judgment.  Yet the Confirmation Judgment did not award post-judgment interest at that rate and there was thus nothing to waive.  Even so, other than Trigeant, Ltd. the Objectors were not parties to the action, could not have pursued an appeal, and could not have waived anything.

PDVSA also argues that judicial estoppel prohibits the Objectors from challenging PDVSA's right to 18% post-judgment interest, citing *Parker v. Wendy's Intern., Inc.*, 365 F.3d 1268, 1271 (11th Cir. 2004).  When considering a claim of judicial estoppel this Court

must apply a two-factor test: "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Id.* (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002)).

For the allegedly inconsistent positions taken under oath, PDVSA points to documents filed and statements made in the first bankruptcy of Trigeant, Ltd., indicating claim amounts for the PDVSA claim that apparently included interest at 18% after the Confirmation Judgment. PDVSA also points to the stipulation of Trigeant, Ltd. in the Texas litigation as to the amount of the PDVSA claim. PDVSA argues that the present Objection is merely part of the protracted war between the principal of BTB and the Objectors, a feud well documented in various rulings of this Court.

The statements made by Trigeant, Ltd. with regard to the PDVSA claim, in the Texas litigation and in this Court, do not merit application of judicial estoppel against Trigeant, Ltd. Trigeant, Ltd.'s stipulation as to the amount of the PDVSA claim in the Texas litigation had no impact on that litigation. From the evidence before the Court, there is no reason to believe that Trigeant, Ltd.'s presentation of the PDVSA claim in its first bankruptcy, in amounts that apparently included interest at 18% after entry of the Confirmation Judgment, and Trigeant, Ltd.'s position in the current Objection, are "calculated to make a mockery of the judicial system" in the manner contemplated by the case law. *See Parker*, 365 F.3d at 1271. The fact that the current Objection is interposed with the obvious intention of interfering with BTB's presentation of its competing plan in this case does not sway the Court to rule otherwise. With regard to the Objectors other than Trigeant, Ltd., PDVSA does not claim any of the Objectors made a prior inconsistent statement under oath that could be subject to judicial estoppel. Thus, even if Trigeant, Ltd. was prohibited from bringing the Objection, the remaining Objectors could do so.

In its Response, PDVSA argues that it is entitled to accrual of interest on its claim under 11 U.S.C. § 506(b). Yet the Objection does not challenge the PDVSA claim on this ground. Because this issue is not now before the Court, the Court makes no ruling with regard to section 506(b).

Lastly, PDVSA challenges the Objectors' stated reservation of the right to raise other objections to the PDVSA claim. PDVSA argues that the present Objection should be treated as the sole objection for purposes of 11 U.S.C. § 502 and, after ruling on the present objection, the Court should allow the PDVSA claim on a final basis. In light of the fast moving nature of this case, and the fact that the present Objection has a significant potential impact on the upcoming confirmation hearing, it is not unreasonable for the Objectors to have pursued this Objection independent of any others. On the other hand, because additional objections to the claim of PDVSA may result in further delay of the confirmation hearing, to the potential detriment of other parties in interest, the Court will set a deadline for additional objections to the claim of PDVSA in this case. If any objections are filed prior to that deadline, the Court will set a non-evidentiary hearing on an expedited basis to consider whether an evidentiary hearing is required and, if so, to consider whether confirmation must be delayed.

## CONCLUSION

For the reasons stated above, it is ORDERED AND ADJUDGED as follows:

1.      The Joint Objection [ECF No. 168] is SUSTAINED.

2.      No later than January 23, 2015, PDVSA shall file amended proofs of claim including a calculation of interest after November 5, 2009 at the rate of 0.39% per annum.

3.      Any party in interest that wishes to file an objection to the claim(s) of PDVSA Petroleo, S.A., as amended pursuant to paragraph 2 of this Order, shall file such objection,

and serve the same on counsel for PDVSA Petróleo, S.A., no later than January 30, 2015.  If no objection is timely filed, the claim(s) of PDVSA Petróleo, S.A., as amended pursuant to paragraph 2 of this Order, shall be allowed as provided in such amended proofs of claim pursuant to 11 U.S.C. § 502, and PDVSA Petróleo, S.A. may file a brief request for the Court to enter a confirmatory order to that effect.  If an objection is timely filed, the Court will set the same for hearing.

###

Copies furnished to:

Mark D. Bloom, Esq.

*Mark D. Bloom, Esq. is directed to serve a conformed copy of this order on all parties in interest and file a certificate of service with the Court.*