

**ORDERED in the Southern District of Florida on May 5, 2015.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

TRIGEANT HOLDINGS, LTD., *et al.*,[1]          Chapter 11 Case
                                               Case No. 14-29027-EPK
      Debtors.                             (Jointly Administered)

_____/

**ORDER CONFIRMING DEBTORS' THIRD AMENDED JOINT PLAN
OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY
<u>CODE AND GRANTING FINAL APPROVAL OF DISCLOSURE STATEMENT</u>**

      This matter came before the Court for hearing on May 4, 2015, in West Palm Beach, Florida (the **"Confirmation Hearing"**),[2] to consider confirmation of the *Debtors' Third Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code* dated April 30, 2015 [ECF No. 567] (the **"Plan"**).

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Trigeant Holdings, Ltd. (5375); Trigeant, LLC (2035); and Trigeant Ltd. (2037). The Debtors' business address is 3020 North Military Trail, Suite 100, Boca Raton, Florida 33431.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed such terms in the Plan or the APA, as applicable.

The Court, having considered the Plan, Amendment No. 13 to the Asset Purchase Agreement [ECF No. 585] ("**APA Amendment No. 13**"), the *First Amended Disclosure Statement in Connection with Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [ECF No. 131] (the "**Disclosure Statement**"), the *Debtors' Motion for Entry of an Order Determining Amount of Disputed Claims Reserve for Class 2 Claim, Class 3 Claim, Certain Class 5 Claims, and Certain Class 7 Claims* [ECF No. 345] (the "**Reserve Motion**"), the evidence presented, the statements and representations of counsel, the pleadings filed in support of the Plan, including the Confirmation Declaration of Stephen Roos [ECF No. 542], Declaration of Jason Goldstein [ECF No. 578], *Certificate of Proponent of Third Amended Plan on Acceptance of Plan, Report on Amount to be Deposited, Certificate of Amount Deposited and Payment of Fees* [ECF No. 569] (the "**Amended Proponent's Report**"), *Amended Plan Supplement* [ECF No. 579] (the "**Amended Plan Supplement**"), the *Stipulation Resolving Plan Confirmation Issues With Union Pacific Railroad Company* [ECF No. 565] (the "**UP Stipulation**"), *Berry GP, Inc. and Berry Contracting, LP d/b/a Bay, Ltd.'s Objection to Debtors' Amended Plan of Reorganization* [ECF No. 582] (the "**Bay/Berry Objection**") and the judicial record and proceedings in these Chapter 11 Cases, and pursuant to Bankruptcy Rule 7052, makes the following findings of fact and conclusions of law.

<u>**Findings of Fact and Conclusions of Law**</u>

A.      Adequate and sufficient notice, as required pursuant to the Bankruptcy Rules and the Court's October 29, 2014 *Order Granting, in Part, and Denying Without Prejudice, in Part Debtors' Motion for Entry of an Order (I) Determining That the Debtors Are Not Required to Solicit Acceptances to the Plan or File a Disclosure Statement, (II) Establishing Notice, Discovery and Objection Procedures with Respect to Confirmation; and (III) Establishing a*

*Procedure and Deadline to File Notice of Cure Claims* [ECF NO. 134] (the **"Notice Order"**) and October 30, 2014 *Order (I) Conditionally Approving Disclosure Statement, Setting Hearing on Final Approval of Disclosure Statement and Confirmation of Chapter 11 Plan, Setting Various Deadlines and Describing Plan Proponent's Obligations* [ECF No. 136] (the **"Procedures Order"**), both as amended by the Court's December 15, 2014 *Order (1) Granting BTB Refining LLC's Motion to Terminate Exclusive Periods in Which Only the Debtor May File a Plan and Solicit Acceptances Thereof; and (2) Resetting Dates and Deadlines Relating to Confirmation* [ECF No. 255], and the Court's February 28, 2015 *Agreed Master Scheduling Order for Plan Confirmation and Other Related Matters* [ECF No. 374], was provided to all known Creditors and holders of Equity Interests, the Office of the U.S. Trustee, counsel of record, and other parties in interest of:  (i) the Plan and Disclosure Statement; (ii) the deadline to file and serve objections to Confirmation of the Plan and to the adequacy of the Disclosure Statement; (iii) the deadline for voting on the Plan; and (iv) the hearings on approval of the Disclosure Statement and Confirmation of the Plan (collectively, **"Notice"**).

### Jurisdiction and Venue

B.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the District Court's general order of reference. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

### Disclosure Statement

C.       The Disclosure Statement was conditionally approved pursuant to the Procedures Order on October 30, 2014. No party in interest has objected to final approval of the Disclosure Statement. The Disclosure Statement contained "adequate information," as that term is defined in Section 1125(a) of the Bankruptcy Code, with respect to *Debtors' First Amended Joint Plan of*

3

*Reorganization under Chapter 11 of the Bankruptcy Code* [ECF No. 107] (the **"First Amended Plan"**), and, in respect of the amendments to the First Amended Plan, as set forth in the Plan, the Disclosure Statement contains "adequate information," as that term is defined in Section 1125(a) of the Bankruptcy Code, with respect to the Plan.  The amendments to the Plan, as reflected therein and in this Confirmation Order, do not have a material adverse impact on the holder of any Claim or Equity Interest, such that no additional notice or solicitation is required.

### 11 U.S.C. § 1129(a)(1)

D.    The Plan complies with the applicable provisions of the Bankruptcy Code, including without limitation Sections 1122, 1123, 1125, and 1129(a), with respect to all Classes of Claims and Equity Interests under the Plan.

E.    The classification of Claims and Equity Interests under the Plan is reasonable. Valid business, factual and legal reasons reasonably exist for the classifications set forth in the Plan. Claims or Equity Interests in each Class are substantially similar to other Claims or Equity Interests in such Class, and the Plan therefore satisfies the requirements of Section 1122(a) of the Bankruptcy Code.

F.    The Plan properly designates the Classes of Claims and Equity Interests in accordance with the applicable provisions of the Bankruptcy Code, including Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

G.    The Plan specifies that no Classes of Claims or Equity Interests are impaired under the Plan, as required by Section 1123(a)(2) of the Bankruptcy Code. Because no Classes of Claims or Equity Interests are impaired under the Plan, Section 1123(a)(3) of the Bankruptcy Code is inapplicable.  To the extent Class 9 is impaired under the Plan, the treatment of such

Class of Equity Interests is specified in the Plan in accordance with Section 1123(a)(3) of the Bankruptcy Code.

H.    The Plan provides for the same treatment of each Claim or Equity Interest of a particular Class (unless a particular holder agrees to less favorable treatment), thereby satisfying the requirements of Section 1123(a)(4) of the Bankruptcy Code.  Claims Purchase Systems, Inc., a holder of Claims in Class 5 and Class 7, has agreed to subordinate a portion of its claims to the claims of other Creditors, but not to any Equity Interests, to which it remains senior.

I.    The Plan provides adequate means for its implementation, thus satisfying the requirements of Section 1123(a)(5) of the Bankruptcy Code. Pursuant to the Plan, Allowed Claims will be paid in full from the proceeds of the Transaction contemplated by the APA. The Transaction contemplated by the APA provides, among other things, that, in consideration of the Purchase Price to be paid to Trigeant by the Buyer, the Buyer will purchase and acquire from Trigeant, and Trigeant will sell, convey, assign, transfer and deliver to the Buyer, all of the Purchased Assets, free and clear of all Liens (including without limitation any tax liens, equitable liens, judgment liens, utility liens, special master orders and liens, resort tax fees and liens and permit fees and liens), Claims (including without limitation as defined in section 105(a) of the Bankruptcy Code), interests (including without limitation within the meaning of section 363(f) of the Bankruptcy Code), encumbrances, claims for successor or transferee liability, rights of setoff or recoupment, rights of possession, memoranda of lease, pledge, covenants, restrictions, security interests, mortgages or lis pendens, contracts, options or other rights to acquire any other interest in the Purchased Assets, and other liabilities, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured,

disputed or undisputed, or known or unknown, whether arising before or after the commencement of these bankruptcy cases, whether imposed by agreement, understanding, law, equity or otherwise, including without limitation, all workers' compensation claims and tort claims, but excluding any easements, covenants, conditions or restrictions of record (collectively, **"Liens and Encumbrances"**).

J.    The Plan provides, as of the Effective Date, and without any further action by the interest holders, managers, partners, directors or members of the Debtors or Reorganized Debtors, and to the extent necessary to comply with section 1123(a)(6) of the Bankruptcy Code, that the Debtors' governance documents shall be amended and restated, in form and substance consistent with the Plan, to provide for, among other things, such provisions, terms, and conditions necessary to comply, conform with, authorize and implement the terms, conditions, requirements, and all acts necessary to implement the Plan. The Plan, therefore, complies with Section 1123(a)(6) of the Bankruptcy Code.

K.    The identities and affiliations of all individuals proposed to serve as the initial directors and officers of each of the Reorganized Debtors as of the Effective Date were disclosed and filed with this Court as part of the Amended Plan Supplement. The foregoing provisions of the Plan for the selection of directors and officers are consistent with the interests of Creditors and Equity Interest holders and with public policy, thereby satisfying Section 1123(a)(7) of the Bankruptcy Code.

L.    The Plan does not contain any provision that is inconsistent with the provisions of the Bankruptcy Code and, therefore, satisfies Section 1123(b)(6) of the Bankruptcy Code.

M.    In accordance with Rule 3016(a) of the Bankruptcy Rules, the Plan is dated and identifies the Debtors as the Plan's proponents.

N.     Accordingly, the Plan satisfies the provisions of Section 1129(a)(1) of the Bankruptcy Code.

**11 U.S.C. § 1129(a)(2)**

O.     The Debtors, as proponents of the Plan, have complied with the applicable provisions of the Bankruptcy Code including, without limitation, Sections 1125 and 1126 and, therefore, have satisfied the requirements of Section 1129(a)(2) of the Bankruptcy Code.

**11 U.S.C. § 1129(a)(3)**

P.     The Plan has been proposed in good faith and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, the Court has considered the evidence presented at the Confirmation Hearing and has examined the totality of the circumstances surrounding the filing and prosecution of the Chapter 11 Cases and the formulation of the Plan. Among other things, there is a reasonable likelihood that the Plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code, including allowing operations to be resumed and achieving satisfaction of Creditors' Claims against the Debtors. Further, the Plan contemplates the payment in full of all Allowed Claims and each holder of Equity Interests has voted in favor of the Plan.  Accordingly, the Plan satisfies the requirements of Section 1129(a)(3) of the Bankruptcy Code.

**11 U.S.C. § 1129(a)(4)**

Q.     Any payments made or to be made by the Debtors, or by a Person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the case, or in connection with the Plan and incident to the case, have been approved by, or are subject to the approval of, this Court as reasonable. Accordingly, the requirements of Section 1129(a)(4) of the Bankruptcy Code have been satisfied.

**11 U.S.C. § 1129(a)(5)**

R.      The Debtors, as plan proponents, have disclosed in the Amended Plan Supplement (i) the identity and affiliations of the individuals proposed to serve, after confirmation of the Plan, as directors, officers, or voting trustees of the Reorganized Debtors and (ii) the compensation to be paid to these individuals. Accordingly, the requirements of Sections 1129(a)(5)(A) and 1129(a)(5)(B) of the Bankruptcy Code have been satisfied.

**11 U.S.C. § 1129(a)(6)**

S.      There is no governmental regulatory commission with jurisdiction over the rates of the Debtors. Accordingly, the requirements of Section 1129(a)(6) of the Bankruptcy Code have been satisfied.

**11 U.S.C. § 1129(a)(7)**

T.      The Plan treats all Classes of Claims and Equity Interests as unimpaired, and pursuant to Section 1126(f) of the Bankruptcy Code, Classes 1, 2, 3, 4, 5, 6, 7, 8 and 9 are all deemed to have accepted the Plan. Accordingly, Section 1129(a)(7) of the Bankruptcy Code does not apply to any Class of Claims or Equity Interests.

U.      Nevertheless, the Debtors solicited the votes of holders of Class 9 Equity Interests, and Class 9 Equity Interests voted 100% in favor of the Plan.[3] Further, each holder of an Equity Interest in Class 9 will receive or retain under the Plan on account of such Equity Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date. Accordingly, even if Class 9 was Impaired, the requirements of Section 1129(a)(7) of the Bankruptcy Code would have been satisfied with respect to Class 9.

---

[3] Harry Sargeant III filed an amended ballot accepting the Plan [ECF No. 584], which ballot is allowed as a late-filed ballot in replacement of the prior ballot rejecting the First Amended Plan [ECF No. 344].

**11 U.S.C. § 1129(a)(8)**

V.       Classes 1, 2, 3, 4, 5, 6, 7, 8 and 9 are unimpaired under the Plan and are deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Nevertheless, the Debtors solicited the votes of holders of Class 9 Equity Interests, and Class 9 Equity Interests voted 100% in favor of the Plan. Accordingly, the requirements of Section 1129(a)(8) of the Bankruptcy Code have been satisfied with respect to each Class of Claims and Equity Interests.

**11 U.S.C. § 1129(a)(9)**

W.       Under the terms of the Plan, all Priority Claims are to be paid in full, in Cash, on the later of the Effective Date or as soon as practicable after the date on which such Priority Claim becomes Allowed, in full settlement, satisfaction, release and discharge of an Allowed Priority Claim.

X.       Under the terms of the Plan, each holder of an Allowed Administrative Expense Claim (including Professional Claims but excluding the DIP Loan Claims) shall, in full satisfaction, settlement, discharge and release thereof, and in exchange thereof, be paid the Allowed amount of its Administrative Expense Claim, in full, in Cash, on: (i) the Effective Date or five Business Days after the date of a Final Order allowing such Administrative Expense Claim (or as soon as practicable thereafter); (ii) for Allowed Administrative Expense Claims that represent liabilities incurred by any Debtor in the ordinary course of business after the Petition Date, the date on which each such Claim becomes due in the ordinary course of the applicable Debtor's business and in accordance with the terms and conditions of any agreement relating thereto; or (iii) at such later date or upon such other less favorable terms as may be mutually agreed upon between each such Creditor entitled to payment of an Allowed Administrative Expense Claim and the applicable Reorganized Debtor.

Y.      Under the terms of the Plan, each holder of an Allowed Priority Tax Claim shall, in full satisfaction, settlement, discharge and release thereof, and in exchange thereof, be paid the Allowed amount of its Priority Tax Claim, in full, in Cash, including statutory interest, on the later of: (i) the Effective Date (or as soon as practicable thereafter) or five Business Days after the date of a Final Order allowing such Priority Tax Claim; or (ii) upon such other dates and terms as may be agreed upon by the holder of any such Allowed Priority Tax Claim and the Reorganized Debtor.

Z.      Accordingly, the requirements of Section 1129(a)(9) of the Bankruptcy Code have been satisfied.

**11 U.S.C. § 1129(a)(10)**

AA.      Section 1129(a)(10) of the Bankruptcy Code does not apply to these Chapter 11 Cases because no class of Claims is impaired under the Plan.

**11 U.S.C. § 1129(a)(11)**

BB.      Confirmation of the Plan is not likely to be followed by any liquidation, or the need for further financial reorganization, of the Debtors or any successors to the Debtors under the Plan, except to the extent that the Plan already contemplates the wind-down and liquidation of the Debtors following the payment of the Purchase Price. Accordingly, the requirements of Section 1129(a)(11) of the Bankruptcy Code have been satisfied.

**11 U.S.C. § 1129(a)(12)**

CC.      The Plan provides for payment in full of all U.S. Trustee fees payable under 28 U.S.C. § 1930. To the extent any fees remain due and owing as of the Confirmation Date, such fees will be paid upon within ten days of the Confirmation Date. Accordingly, the requirements of Section 1129(a)(12) of the Bankruptcy Code have been satisfied.

**11 U.S.C. § 1129(a)(13)**

DD.    The Debtors are not obligated now, nor will they become obligated in the future, to pay retiree benefits described in Section 1129(a)(13) of the Bankruptcy Code. Accordingly, the requirements of Section 1129(a)(13) of the Bankruptcy Code have been satisfied.

**11 U.S.C. § 1129(a)(14)-(16)**

EE.    Sections 1129(a)(14), (15) and (16) of the Bankruptcy Code do not apply to these Chapter 11 Cases because these provisions apply either to individual debtors or to nonprofit corporations and trusts.

**11 U.S.C. § 1129(b)**

FF.    Because Section 1129(a)(8) of the Bankruptcy Code has been satisfied, Section 1129(b) of the Bankruptcy Code does not apply to these Chapter 11 Cases.

**11 U.S.C. § 1129(c)**

GG.    The requirements of Section 1129(c) of the Bankruptcy Code have been satisfied because the Plan is the only plan that is being considered for confirmation.

**11 U.S.C. § 1129(d)**

HH.    No party in interest that is a governmental unit has requested that the Court not confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, and the principal purpose of the Plan is not such avoidance. Accordingly, the Plan satisfies the requirements of Section 1129(d) of the Bankruptcy Code.

**11 U.S.C. § 1129(e)**

II.    These Chapter 11 Cases are not small business cases, and therefore the requirements of Section 1129(e) of the Bankruptcy Code do not apply.

### Sale of the Purchased Assets

JJ.    The Purchased Assets including, without limitation, the Business Fixtures, the RR Contracts, and the Waterline Use Agreement, dated as of January 12, 1989, among Berry Contracting, Inc., Petcor Services, Inc. and the Seller, as successor in interest to Trifinery Petroleum Services (the "**Waterline Use Agreement**"), the Pipeline Use Agreement, dated as of January 12, 1989, between Berry Contracting, Inc. and the Seller, as successor in interest to Trifinery (the "**Pipeline Use Agreement**"), the Easement, effective as of June 11, 1989, among Berry Contracting, Inc., Harbor Refining, Inc., Bay, Inc., and the Seller, as successor to Trifinery (the "**Berry Easement**), the Lease Agreement, dated as of October 18, 2001, between Berry GP, Inc. and Seller (the "**Berry Lease**"), the Lease Agreement, dated as of March 24, 2006, between Berry GP, Inc. and Seller (the "**2006 Lease**") and the Special Warranty Deed with Vendor's Lien dated October 18, 2001 between Berry GP, Inc., as grantor, and Seller, as grantee (the "**2001 Deed**," and together with the Waterline Use Agreement, the Pipeline Use Agreement, the Berry Easement, the Berry Lease and the 2006 Lease, the "**Bay/Berry Agreements**") constitute property of Trigeant's estate within the meaning of Section 541(a) of the Bankruptcy Code, and Trigeant has all right, title, and interest in the Purchased Assets including, without limitation, the Business Fixtures, the RR Contracts, and the Bay/Berry Agreements. There is no enforceable restriction on Trigeant's right to transfer and convey the Purchased Assets including, without limitation, the Business Fixtures, the RR Contracts, and the Bay/Berry Agreements, to the Buyer as contemplated by the APA. The Harry Parties have acknowledged that they have no right, title or interest in any of the Purchased Assets or any of the assets or property currently located at the Acquired Real Property including, without limitation, the Business Fixtures, Licenses and

Permits, Assumed Executory Contracts, the RR Contracts, and the Bay/Berry Agreements (which do not include the Dock Use Agreement, which the Court determined is owned by BTB).

KK.    The Debtors have demonstrated good and sufficient cause to sell the Purchased Assets to the Buyer, enter into the APA, and consummate the Transaction. Such action is an appropriate and reasonable exercise of the Debtors' business judgment, and is in the best interests of the Debtors, their estates, Creditors, and Equity Interest holders.

LL.    The Debtors have full corporate power and authority to execute the APA and all other documents contemplated thereby, to perform all of their respective obligations thereunder, and to consummate the Transaction. The sale of the Purchased Assets has been duly and validly authorized by all corporate authority necessary to consummate the Transaction. Neither the execution of the APA by Trigeant nor the consummation by Trigeant of the sale of the Purchased Assets in accordance with its terms, will constitute a violation of any law, regulation or ordinance under which Trigeant or the Purchased Assets are bound. No consents or approvals, other than as expressly provided for in the APA, are required by Trigeant to consummate such transactions.

MM.    The APA and the Transaction have been negotiated by the Debtors and the Buyer and entered into in good faith, at arm's length, and without collusion or fraud. The Buyer is not an "insider" of the Debtors as that term is defined in Section 101(31) of the Bankruptcy Code. The terms and conditions of the APA and the Transaction, including the total consideration realized by the Debtors pursuant to the APA, are fair and reasonable, and the Transaction is in the best interests of the Debtors, their estates, and their Creditors and Equity Interest holders. The Buyer is a purchaser for value and in "good faith," as that term is used in the Bankruptcy Code and the decisions thereunder, will be acting in good faith pursuant to Section 363(m) of the

Bankruptcy Code in closing the Transaction, and is entitled to the protections of Section 363(m) of the Bankruptcy Code with respect to all of the Purchased Assets. The Buyer has proceeded in good faith in all respects in connection with these Chapter 11 Cases, the APA, the Plan Support Agreement, the Plan and the Transaction.

NN.    As of the Closing Date, the sale under the APA of the Purchased Assets will effect a legal, valid, enforceable and effective sale and transfer of the Purchased Assets and shall vest the Buyer with title to such Purchased Assets free and clear of all Liens and Encumbrances pursuant to Sections 363(b) and (f) of the Bankruptcy Code, subject to the Permitted Exceptions.

OO.    The Debtors gave due and proper notice of the APA, the Plan and the Confirmation Hearing to each party entitled thereto.

PP.    The sale price of the Purchased Assets was not controlled by an agreement between potential or actual bidders within the meaning of Section 363(n) of the Bankruptcy Code. The Debtors and the Buyer have not engaged in any conduct that would cause or permit the APA or the consummation of the Transaction to be avoided, or costs or damages to be imposed, under Section 363(n) of the Bankruptcy Code.

QQ.    PDVSA Petroleo S.A. (**"PDVSA"**) filed suit in the United States District Court for the Southern District of Texas, Corpus Christi Division (the **"Texas District Court"**) styled *PDVSA Petroleo, S.A. vs. Trigeant Ltd. and BTB Refining, LLC*, Case No. 2:09-CV-0038. PDVSA then filed a Notice of Lis Pendens on November 11, 2009 in the Official Records of Nueces County, Texas under County Clerk File Number 2009-45668 (the **"PDVSA Lis Pendens"**) stating that PDVSA ". . . is seeking to set aside [the BTB substitute trustee's deed] as a fraudulent conveyance." The Texas District Court subsequently set aside BTB's foreclosure sale, and corresponding substitute trustee's deed, pursuant to a final, non-appealable judgment

14

dated January 14, 2013. As a result of the entry of final judgment and closure of the proceeding, the PDVSA Lis Pendens was terminated by operation of law. *Rosborough v. Cook*, 108 Tex. 364, 367 (1917) ("[A] lis pendens operates only during the pendency of the suit, and only as to those matters that are involved in the suit. It terminates with the judgment."). Further, PDVSA is being paid in full and its Claim will be discharged under the Plan.

RR.    The sale of the Purchased Assets to the Buyer will be a legal, valid and effective transfer of such assets, and such transfer and assignment will vest the Buyer with all right, title and interest of Trigeant to the Purchased Assets free and clear of all Liens and Encumbrances (subject to Permitted Exceptions), including without limitation the PDVSA Lis Pendens and any and all other Liens and Encumbrances of: (i) any of the Harry Parties; (ii) PDVSA; (iii) any Creditor of the Debtors; and (iv) any Equity Interest holder of the Debtors. Any such Liens and Encumbrances, if any and if valid, shall attach to the proceeds of the sale contemplated by the APA in the same priority and subject to the same defenses and avoidability, if any, as of the Closing Date. The Buyer would not have entered into the APA to acquire the Purchased Assets and would not consummate the Transaction if the sale of the Purchased Assets were not free and clear of all Liens and Encumbrances (subject to Permitted Exceptions), or if the Buyer would, or in the future could, be liable for any such Liens and Encumbrances, including claims based on successor or transferee liability. If the Purchased Assets were not transferred free and clear of all Liens and Encumbrances the Debtors' ability to maximize the value of their estates would be adversely impacted.

SS.    The Debtors may sell the Purchased Assets free and clear of Liens and Encumbrances as provided in the Plan, the APA and this Confirmation Order, because one or more of the provisions set forth in Section 363(f) of the Bankruptcy Code have been satisfied

with respect to each of the Liens and Encumbrances. Given that no objections to Confirmation have been filed with the Court (other than the Bay/Berry Objection), any holders of Liens and Encumbrances are deemed to have consented to Confirmation, the sale of the Purchased Assets, and the consummation of the Transaction pursuant to Section 363(f)(2) of the Bankruptcy Code. Under the Plan, all Allowed Claims in respect of Liens and Encumbrances will be paid in full with the sale proceeds of the Transaction.

TT.    Except for the Assumed Liabilities, the Buyer is not assuming any of the debts, liabilities or obligations of the Debtors, and the Buyer shall not in any way be liable or responsible for any liabilities, commitments or obligations in any way related to the Debtors or the Purchased Assets arising before the Closing Date. Except as expressly provided for in the Plan, the APA and this Confirmation Order, none of the Debtors or their estates shall in any way be liable or responsible for any liabilities, commitments or obligations in any way related to the Purchased Assets arising from and after the Closing Date.

UU.    The Debtors and the Buyer do not have any common controlling shareholders or senior management. The Buyer and its principals and equity holders are not insiders, as that term is defined in Section 101 of the Bankruptcy Code and the decisions thereunder. The Buyer is not merely a continuation of the Debtors; there is no continuity of enterprise between the Debtors on the one hand, and the Buyer on the other hand; the Buyer is not a successor to the Debtors; and the transactions under the APA do not amount to, or otherwise constitute, a consolidation, merger, or de facto merger of the Buyer on the one hand and the Debtors on the other hand.

VV.    The Transaction and Trigeant's entry into the APA are not for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the

United States, any state, territory, possession or the District of Columbia. None of the Debtors or the Buyer is or will be entering into the Transaction fraudulently.

WW.   The terms and conditions of the APA, including the total consideration to be realized by the Debtors' estates from the Buyer pursuant to the APA, are fair and reasonable, and constitute full and adequate consideration and reasonably equivalent value for the Purchased Assets under applicable law. The Transaction is in the best interests of the Debtors, their estates, Creditors, and Equity Interest holders. No other person or entity has offered to purchase the Purchased Assets for an amount that would give greater economic value to the Debtors.

**Executory Contracts**

XX.   The Debtors' (a) assumption of and assignment to the Buyer of the Assumed Executory Contracts set forth in the Schedule of Assumed Executory Contracts and Leases filed as a part of the Amended Plan Supplement, and (b) rejection of all other all executory contracts and unexpired leases, in accordance with the terms of the Plan, is in the best interests of the Debtors and their estates. No party to any Assumed Executory Contract identified in the Amended Plan Supplement has filed a timely Cure Claim in accordance with the Notice Order.[4] Accordingly, none of the counterparties to any of the Assumed Executory Contracts have any claims against the Debtors, the Reorganized Debtors, or the Buyer for liabilities arising before the Effective Date in respect of such Assumed Executory Contracts.

YY.   The Debtors have satisfied the provisions of Section 365 of the Bankruptcy Code with respect to the assumption and assignment of the Assumed Executory Contracts pursuant to

---

[4] As required in decretal paragraph 30 of this Confirmation Order, to the extent the landlord under the Berry Lease is no longer Berry GP, Inc. but instead is Valero Terminaling and Distribution Company (**"Valero"**), the Debtors shall serve on Valero a notice of Trigeant's assumption and assignment of the Berry Lease to the Buyer, within one day of the date of entry of this Confirmation Order, and Valero shall have 14 days from the date of service of such notice to object to the assumption and assignment of the Berry Lease to the Buyer, failing which, the Berry Lease will be assumed and assigned to the Buyer in accordance with the Plan, the APA, the other Plan Documents, and this Confirmation Order.

Article IX of the Plan, and have provided sufficient and undisputed evidence of the ability of the Buyer to provide adequate assurance of future performance of the Assumed Executory Contracts.

### The Sargeant Settlement

ZZ.    The Sargeant Settlement is in the best interests of the Debtors, their estates, Creditors and Equity Interest holders, and will bring to a conclusion years of costly and protracted litigation between and among the Consenting Owners, the Debtors, and certain of their Affiliates, on the one hand, and the Harry Parties, and certain of their Affiliates, on the other hand. Approval of the Sargeant Settlement is integral to confirmation of the Plan, and will facilitate the closing of the Transaction. Absent approval of the Sargeant Settlement, significant litigation – at great cost to all parties – would ensue for the foreseeable future, and would jeopardize the ability of the Debtors to confirm the Plan and consummate the Transaction.

AAA.    The probability of the Debtors' success in the litigation is uncertain, and any judgment by the Debtors or the Consenting Owners would be difficult to collect. The complexity of the intra-family litigation resolved by the Sargeant Settlement cannot be understated, and the expense, inconvenience, and delay necessarily attending such litigation would be exorbitant. Approval of the Sargeant Settlement will ensure that third party creditors receive payment of 100% of their Allowed Claims. Thus, it is in the paramount interests of Creditors that the Sargeant Settlement be approved.

### Preservation of Causes of Action

BBB.    It is in the best interests of Creditors and Equity Interest holders that the Causes of Action that are not expressly released under the Plan and the Sargeant Settlement (including the separate mutual releases of and by the Sargeant Release Parties and Harry Release Parties

thereunder) be retained by the Reorganized Debtors in order to maximize the value of the Debtors' estates.

**Disclosure Statement**

CCC.   The Debtors and the Buyer and their Related Persons have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in connection with the Plan and Disclosure Statement and are, therefore, not liable under any applicable law, rule or regulation governing solicitation of acceptance or rejection of the Plan or the offer, issuance, sale or purchase of securities.

**Third Party Releases, Exculpation and Injunctions**

DDD.   The releases of claims and causes of action by holders of Claims and Interests described in Section 11.10(a) of the Plan (i) are only applicable to those holders of Claims against and Interests in the Debtors that vote to accept the Plan, accept a distribution under the Plan, are deemed to accept the Plan or abstain from voting on the Plan, and (ii) only benefits the Released Parties, which are the Buyer, EFM and the DIP Lender and their respective Related Persons.   The aforementioned releases are (a) in exchange for good and valuable consideration being provided by the Buyer, (b) a good faith settlement and compromise of the Claims and Interests pursuant to the terms of the Plan, (c) in the best interests of the Debtors and all holders of Claims and Interests, (d) fair, equitable, reasonable and necessary to the Plan, and (e) given and made after notice and a hearing.

EEE.   The exculpation provisions set forth in Section 11.9 of the Plan are also essential to the Plan. The record in these Chapter 11 Cases fully supports the exculpation and the exculpation provisions set forth in Section 11.9 of the Plan are appropriately tailored to protect the exculpated parties.

19

FFF.   The injunction provisions set forth in the Plan and this Confirmation Order are essential to the Plan and are necessary to preserve and enforce the Debtors' discharge, the releases, the exculpation provisions, and the free and clear transfer of the Purchased Assets, and are appropriately tailored to achieve that purpose.

### Oral Findings Incorporated by Reference

GGG.  The Court's oral findings of fact and conclusions of law announced on the record at the Confirmation Hearing are incorporated by reference herein.

### Requirements for Confirmation Satisfied

HHH. All of the requirements for Confirmation under 11 U.S.C. § 1129 have been satisfied. Confirmation of the Plan is in the best interests of the Debtors' estates, their Creditors, their Equity Interest holders, and all other parties in interest.

III.    Upon entry of this Confirmation Order, (i) all conditions precedent to Confirmation set forth in Section 10.1 of the Plan have been satisfied or waived by the Debtors and the Buyer; and (ii) all provisions of the Plan, APA, or Plan Support Agreement requiring removal of the Heels have been waived by the Plan Proponents and the Buyer.

JJJ.    Pursuant to APA Amendment No. 13, the Bay/Berry Agreements no longer include the Dock Use Agreement. Pursuant to the UP Stipulation and APA Amendment No. 13, the RR Contracts no longer include the Terminated Trigeant Contracts. Accordingly, upon this Confirmation Order becoming a Final Order, the condition precedent to the occurrence of the Effective Date of the Plan set forth in Section 10.2(f) of the Plan will have been satisfied.

It is therefore **ORDERED**:

1.    The Plan, as amended pursuant to paragraphs 2 and 3 of this Confirmation Order, is **CONFIRMED**.

20

2.      Section 4.3(b)(ii) of the Plan is amended by deleting such subsection in its entirety and replacing it with the following:

> "*Payment of the PDVSA Excess Distribution on the Effective Date.* On the Effective Date, or as soon thereafter as is practicable, PDVSA shall receive Cash in the amount of $379,032.00 payable from the PDVSA Excess Distribution Amount, which amount shall represent the satisfaction of the Harry Parties' obligation under the PDVSA Settlement Agreement to pay PDVSA's attorneys' fees and costs (the **"PDVSA Fee Amount"**). Payment of the PDVSA Fee Amount shall be made by wire transfer pursuant to instructions to be provided by counsel for PDVSA. On the Effective Date, or as soon thereafter as practicable, BTB or Silca, as designated by both BTB and Silca at or before the commencement of the Confirmation Hearing, shall receive Cash in the amount of the PDVSA Excess Distribution Amount, with interest calculated at the rate applicable to the PDVSA Claim giving effect to Unstayed Orders, as provided in the Sargeant Settlement Agreement, less the PDVSA Fee Amount. This payment shall be made by wire transfer pursuant to instructions to be provided by counsel for BTB or Silca, as appropriate."

3.      Section 4.7(b) of the Plan is amended by deleting such subsection in its entirety and replacing it with the following:

> "*Treatment of the IOTC Claim.*  The IOTC Claim is Allowed.  On the Effective Date, or as soon thereafter as practicable, IOTC shall receive a Distribution, in full settlement, satisfaction, release and discharge of such Claim, (i) a payment of Cash in the amount of $56,000,000.00 less the sum of (x) the PDVSA Fee Amount, and (y) all Distributions to BTB or Silca, as the case may be, on account of the Class 2 Claim, the Class 3 Claims and the Class 5 Claims, as provided in the Sargeant Settlement Agreement, and (ii) an assignment, without any recourse, representation or warranty, of that certain Cause of Action of the Debtors against the Dominican Republic Ministry of Public Works as provided in the Sargeant Settlement Agreement."

4.      The Bay/Berry Objection and any other objections to Confirmation not withdrawn or otherwise addressed in this Confirmation Order are all expressly **OVERRULED**.

5.      The Disclosure Statement is **APPROVED** on a final basis pursuant to Section 1125 of the Bankruptcy Code.

21

6.      The Reserve Motion is deemed modified to be consistent with the Amended Proponent's Report, and is **GRANTED**.

7.      The Findings of Fact and Conclusions of Law set forth above shall constitute findings of fact and conclusions of law of this Court pursuant to Bankruptcy Rule 7052. To the extent any finding of fact later shall be determined to be a conclusion of law it shall be so deemed, and to the extent any conclusion of law shall later be determined to be a finding of fact it shall be so deemed.

8.      Notice was adequate and sufficient under the Procedures Order, the Notice Order, the Bankruptcy Code and Bankruptcy Rules, the Local Rules and Orders of this Court, and the Due Process Clause of the United States Constitution.

9.      The Transaction is **AUTHORIZED** and **APPROVED**.

10.     The Debtors are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, and other agreements or documents created in connection with the Plan.

11.     The Amended Plan Supplement and other Plan Documents are **APPROVED**. From and after the Confirmation Date, the authority to amend, modify, or supplement the Amended Plan Supplement, Exhibits to the Amended Plan Supplement and Exhibits to the Plan, and their respective attachments, shall be as provided in such Amended Plan Supplement, Exhibits to the Amended Plan Supplement and Exhibits to the Plan, and their respective attachments.

12.     The Debtors and Reorganized Debtors, as applicable, the parties to the Plan Documents, and any other Person having duties or responsibilities under the Plan, the Plan Documents, or this Confirmation Order, and their respective directors, officers, general partners,

managers, agents, trustees, representatives, and attorneys are specifically authorized and empowered to take any and all actions necessary or appropriate to implement, effectuate, and consummate the Plan, the Plan Documents, or the terms of this Confirmation Order, and the transactions respectively contemplated in those documents, all in accordance with the terms of the Plan, the Plan Documents, and this Confirmation Order, regardless of whether such actions are specifically referred to in the Plan, the Plan Documents, or this Confirmation Order, without the need for further shareholder, member, director, officer, partner, manager, or any other corporate, partnership or limited liability company approvals, or further order of the Court.

13.    All DIP Loan Claims are Allowed, and, on the Effective Date, each holder of an Allowed DIP Loan Claim shall receive, from the Buyer, (i) payment in full in Cash of such Allowed DIP Loan Claim in full and final satisfaction thereof other than the obligations under the indemnity and other provisions of the DIP Note that by their terms survive the termination of the DIP Note, or (ii) such other treatment as to which the Debtors and the holder of such Allowed DIP Loan Claim may agree in writing. As set forth in the APA, the Purchase Price payable to Trigeant shall be reduced by the amount paid by the Buyer on account of the Allowed DIP Loan Claims. Also on the Effective Date, all commitments under the DIP Note shall terminate.

### Sale of the Purchased Assets

14.    Effective as of the Closing Date, the sale of the Purchased Assets by Trigeant to the Buyer shall constitute a legal, valid and effective transfer of the Purchased Assets (including, without limitation, the Business Fixtures) notwithstanding any requirement for approval or consent by any Person and vest the Buyer with all right, title and interest of Trigeant in and to the

Purchased Assets, free and clear of all Liens and Encumbrances as provided in the APA, the Plan, and this Confirmation Order, subject to the Permitted Exceptions.

15.     Upon the occurrence of the Closing Date, this Confirmation Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets, and/or a bill of sale or assignment transferring indefeasible title and interest in the Purchased Assets including, without limitation, the Business Fixtures to the Buyer.

16.     The sale of the Purchased Assets has been undertaken by the Buyer and the Debtors at arm's length, without collusion, in good faith and for value. The Buyer will acquire the Purchased Assets pursuant to the APA in good faith within the meaning of Section 363(m) of the Bankruptcy Code, and is granted all of the protections in accordance therewith. Accordingly, unless stayed pending appeal, the reversal or modification on appeal of the authorization provided herein shall not affect the validity or enforceability of the APA, the sale of the Purchased Assets to the Buyer, or the consummation of the Transaction, and notwithstanding any reversal or modification on appeal, any sale of the Purchased Assets and consummation of the Transaction shall be governed in all respects by the original provisions of the APA, the Plan, or this Confirmation Order, as the case may be.

17.     The sale of the Purchased Assets pursuant to the APA or the consummation of the Transaction may not be avoided, or constitute grounds for the imposition or recovery of damages, under (i) Section 363(n) of the Bankruptcy Code, (ii) the fraudulent transfer provisions of the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, Uniform Fraudulent Transfer Act, or any similar laws of any state whose law is applicable to the APA, or (iii) any other provision of the Bankruptcy Code or other applicable non-bankruptcy law. No bulk sales law or

any similar law of any state or other jurisdiction shall apply in any way to the sale of the Purchased Assets or the Transaction.

18.    Pursuant to section 363(f) of the Bankruptcy Code, the sale of the Purchased Assets pursuant to the APA, the Plan, and this Confirmation Order, shall be free and clear of any and all Liens and Encumbrances. All such Liens and Encumbrances on and in respect of the Purchased Assets shall attach to the proceeds of the sale of the Purchased Assets pursuant to the Plan and this Confirmation Order to the same extent and with the same priority as such Liens and Encumbrances existed in respect of the Purchased Assets immediately prior to the Closing Date. Following the Closing Date, no holder of any Lien and Encumbrance on the Purchased Assets may interfere with the Buyer's use and enjoyment of the Purchased Assets based on or related to such Lien and Encumbrance, and no interested party may take any action to prevent, interfere with or otherwise enjoin consummation of the Transaction. The provisions of this Confirmation Order authorizing the sale of the Purchased Assets free and clear of Liens and Encumbrances shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Confirmation Order, but they are authorized to do so.

19.    The PDVSA Lis Pendens has been terminated, and is of no force and effect.

20.    Effective upon entry of this Confirmation Order, the Harry Parties permanently relinquish to Trigeant, and Trigeant accepts, all right, title and interest in, and all claims to, the heels located at the Acquired Real Property (the **"Heels"**) and any remaining product, materials or residue in the storage tanks located at the Debtors' property, upon which BTB shall be released from any liability in connection with or associated therewith. The Heels and such

product, material or residue shall constitute Purchased Assets and, notwithstanding anything to the contrary in the Plan (including, without limitation, Article 10.2(h)) or the APA, shall not be required to be removed prior to Closing.

21.    The Buyer shall not be liable or obligated, or assume or in any way be responsible, for any liabilities or obligations of the Debtors, their estates or the Purchased Assets (whether direct or indirect, liquidated or unliquidated, choate or inchoate, or contingent or fixed) arising before the Closing Date, other than the Assumed Liabilities, which shall survive the Closing Date as valid, legal and enforceable obligations of the Buyer.

22.    The Buyer is not nor shall be (a) deemed a "successor" in any respect to the Debtors or their estates as a result of the consummation of the Transaction contemplated by the APA or any other event occurring in the Chapter 11 Cases under any theory of law or equity, (b) deemed to have, de facto or otherwise, merged or consolidated with or into any of the Debtors or their estates, (c) deemed to have a common identity with any of the Debtors, (d) deemed to have a continuity of enterprise with any of the Debtors, or (e) deemed to be a continuation or substantial continuation of any of the Debtors or any enterprise of any of the Debtors; and the Buyer shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, liability or responsibility for any claim against any of the Debtors or against an insider of any of the Debtors, or similar liability except for the Assumed Liabilities.

23.    This Confirmation Order shall be binding upon and govern the acts of all persons or Entities, including, without limitation, all filing agents, recording agencies, secretaries of state

and all other Persons and Entities who may be required by operation of law to accept, file, register or otherwise record or release any documents or instruments.

24.     All Persons or Entities, currently or on or after the Closing Date, in possession or control of some or all of the Purchased Assets are directed to surrender possession or control of the Purchased Assets to the Buyer on the Closing Date or at such time thereafter as the Buyer requests.

25.     All utilities or Entities that provide or have provided water, electricity, gas, oil, telephone and similar services to the Debtors shall be enjoined and prohibited from interrupting, canceling or terminating such services to the Buyer, from and after the Closing Date as a result, directly or indirectly, of claims against the Debtors, including for unpaid charges.

26.     To the greatest extent available under applicable law, and to the extent provided for pursuant to the APA, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and any other governmental authorization or approval of the Debtors with respect to the Purchased Assets and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date. The Buyer shall apply for and obtain any necessary license or permit promptly after the Closing Date and, to the extent permitted by applicable law, such licenses or permits of the Debtors shall remain in place for the Buyer's benefit until new licenses and permits are obtained.

27.     To the extent provided by Section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred or conveyed to the Buyer on account of the filing of pendency of these Chapter 11 Cases or the consummation of the Transaction.

28.     Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any property, equity security or notes, or the creation, making, assignment, delivery or recording of any mortgage, deed of trust, instrument of transfer, pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or the vesting, re-vesting, transfer or sale of any property of, by or in the Debtors or their estates or Reorganized Debtors pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, sales and use, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall, by this Confirmation Order, be enjoined from, and directed to forego, the collection of any such tax or governmental assessment and be required to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. The Debtors, Reorganized Debtors, and the Buyer are hereby authorized to deliver this Confirmation Order to any state or local recording officer, and such officer (or any Person or Entity with authority over any of the foregoing) shall comply with the requirements of Section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment and shall accept for filing such documents or instruments without charging any stamp tax, recording tax, personal property transfer tax, mortgage or other similar tax. The Court specifically retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

**Executory Contracts**

28

29.    The Debtors' assumption of the Assumed Executory Contracts listed on Exhibit A to the Amended Plan Supplement, and the assignment of those executory contracts and unexpired leases to the Buyer is approved pursuant to Sections 365(a) and 1123 of the Bankruptcy Code. No cure amounts are payable in connection with the Debtors' assumption and assignment of the Assumed Executory Contracts.

30.    **To the extent the landlord under the Berry Lease is no longer Berry GP, Inc. but instead is Valero, the Debtors shall serve on Valero a notice of Trigeant's assumption and assignment of the Berry Lease to the Buyer, within one day of the date of entry of this Confirmation Order, and Valero shall have 14 days from the date of service of such notice to object to the assumption and assignment of the Berry Lease to the Buyer, failing which, the Berry Lease will be assumed and assigned to the Buyer in accordance with the Plan, the APA, the other Plan Documents, and this Confirmation Order.**

31.    Thirty days after the Effective Date, all executory contracts and unexpired leases that exist between the Debtors and any Entity that have not previously been assumed and assigned to the Buyer pursuant to the terms of this Confirmation Order and the APA, or are not the subject of pending motions to assume, assign or reject as of the Confirmation Date, shall be deemed rejected in accordance with the provisions and requirements of Section 365 of the Bankruptcy Code.

32.    **Claims arising from the rejection of executory contracts or unexpired leases (including, without limitation, any rejection provided for in Section 9.1 of the Plan or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Court and served on the Debtors no later than: (a) <u>thirty days</u> after the Confirmation Date, with respect to any executory contract or**

unexpired lease that was terminated or expired by its own terms prior to the Confirmation Date, (b) **thirty days** after the date of the entry of any order of the Court authorizing rejection, with respect to any executory contract or unexpired lease rejected by the Debtors, or (c) **sixty days** after the Effective Date, with respect to any executory contract or unexpired lease that is deemed rejected pursuant to Section 9.1 of the Plan. Any rejection claim for which a proof of claim is not filed and served within the time provided herein will be forever barred from assertion and shall not be enforceable against the Debtors, or their estates, assets, properties, or interests in property, or the Reorganized Debtors, or their estate, assets, properties, or interests in property. Unless otherwise ordered by the Court, all such Claims that are timely filed as provided in this paragraph shall be treated as a Claim under Class 5 or 7, as the case may be, and shall be subject to the provisions of the treatment of Disputed Claims covered by Article VIII of the Plan. Nothing contained herein shall be deemed an admission by the Debtors or any of them that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtors or the Reorganized Debtors of any objections to such Claim if asserted.

### Implementation of the Plan

33.    All actions contemplated to be performed by the Debtors or the Reorganized Debtors pursuant to the Plan, the Plan Support Agreement, and/or the APA, or any action to be taken by or required of the Debtors or the Reorganized Debtors, shall, as of the Effective Date, be deemed to have occurred and be effective as provided in the Plan, and shall be authorized and approved in all respects without any requirement for further action by the shareholders, equity holders, interest holders, partners, members or managers of the Debtors or the Reorganized Debtors. All Persons, the Reorganized Debtors, Governmental Units, title agencies, licensing

agencies and offices of recordation may rely upon the authority vested in the Debtors' officers, or managers to act on the Debtors' behalf in order to effectuate the Plan and the transactions contemplated herein.

34.     Except as otherwise provided in the Plan, the APA or the other Plan Documents, pursuant to Sections 1123(a)(5), 1123(b)(3) and 1141(b) and (c) of the Bankruptcy Code, on the Effective Date, all property of the Debtors' estates, excluding the Purchased Assets, but including the Purchase Price, shall vest in the Reorganized Debtors free and clear of all Liens, Claims, charges, or other encumbrances as provided in Section 6.6 of the Plan. As of the Effective Date, the Reorganized Debtors may operate their business(es) and use, acquire, and dispose of their property, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and this Confirmation Order. All privileges with respect to the property of the Debtors' estates, including the attorney/client privilege, to which the Debtors are entitled shall automatically vest in, and may be asserted by or waived on behalf of, the Reorganized Debtors.

35.     The Distributions will be made in accordance with the Plan, as set forth in the Amended Proponent's Report, by the Debtors or the Reorganized Debtors.

36.     Except as otherwise provided in the Plan, the APA or the other Plan Documents, the Reorganized Debtors will exist after the Effective Date as reorganized, separate limited liability companies, limited partnerships, or other business entity forms, with all of the powers of such business form under applicable law in the jurisdiction in which the Debtors are formed and pursuant to their respective formation document(s) and other organizational documents in effect before the Effective Date, except to the extent such formation documents are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to

be authorized pursuant hereto and without the need for any other approvals, authorizations, actions or consents. Notwithstanding the above, each of the Debtors or Reorganized Debtors may alter its business form (either through a merger, consolidation, restructuring, conversion, disposition, liquidation, dissolution, or otherwise) on or after the Effective Date as may be determined by the Debtors or Reorganized Debtors to be appropriate. In each case in which the surviving, resulting, or acquiring company in any such transaction is a successor to any Debtor, such successor company shall perform the obligations of such Debtor under the Plan, if any, including, to pay or otherwise satisfy the Allowed Claims against such Debtor.

37.     As of the Effective Date, and without any further action by the interest holders, managers, partners, directors or members of the Debtors or Reorganized Debtors, and to the extent necessary to comply with Section 1123(a)(6) of the Bankruptcy Code, the Debtors' governance documents shall be amended and restated, in form and substance consistent with the Plan, to provide for, among other things, such provisions, terms, and conditions necessary to comply, conform with, authorize and implement the terms, conditions, requirements, and all acts necessary to implement the Plan. The officers, managers, partners, as the case may be of the Reorganized Debtors are authorized to file such governance documents with the appropriate authority(ies) without partner or manager approval or any other action. After the Effective Date, the Reorganized Debtors may amend and/or restate their articles of incorporation and by-laws as permitted under applicable law.

38.     As disclosed in the Amended Plan Supplement, as of the Effective Date, the directors, officers, partners, members and managers, as the case may be, of the Debtors immediately prior to the Effective Date shall be deemed to be the directors, officers, partners, members and managers, as the case may be, of the Reorganized Debtors without any further

action by any party. On and after the Effective Date, the operations of the Reorganized Debtors shall continue to be the responsibility of their directors, officers, partners, members and managers, as the case may be, or as set forth in the applicable existing organizational or operational documents of the Debtors. Each director, officer, partner, member and manager, as applicable, of the Reorganized Debtors shall serve from and after the Effective Date until his or her successor is duly elected or appointed and qualified or until his or her earlier death, resignation or removal in accordance with the applicable articles or certificate of incorporation, operating agreement or other organizational documents of the Reorganized Debtors. From and after the Confirmation Date, the directors, officers, partners, members and managers, as applicable, of the Debtors and the Reorganized Debtors, as the case may be, shall have all powers accorded by law to put into effect and carry out the Plan and this Confirmation Order.

39.    On, before or after the Effective Date, and without the need for any further order or authority, the Debtors may execute, as appropriate, such agreements and other documents that are in form and substance satisfactory to the Debtors and Buyer as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the APA. The Debtors, the Reorganized Debtors, and any other necessary party, as applicable, shall perform all actions reasonably contemplated regarding the implementation of the Plan and the APA. Each of the directors, officers, partners, members and managers, as the case may be, of the Debtors and the Reorganized Debtors is authorized, without the need for any further order or authority (i) to execute, deliver, file, or record such contracts, instruments, releases, indentures, mortgages, and other agreements or documents and take such actions as may be necessary or appropriate to implement or consummate the Plan and the APA, and (ii) to undertake any other action on behalf of the Debtors to implement or consummate the Plan and the APA. Each of the

matters provided for under the Plan and the APA involving the corporate structure of the Debtors or corporate action to be taken by or required of any Debtors will, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and (to the extent taken before the Effective Date) ratified in all respects without any requirement of further action by any stockholder, creditor, or director of the Debtors.

### Retained Causes of Action, Litigation, and Claim Objections

40.    The Debtors (prior to the Effective Date) and the Reorganized Debtors (on and after the Effective Date) shall retain all Causes of Action, except for those transferred to the Buyer or released in accordance with the APA, the Sargeant Settlement Agreement, the Plan or any related agreement, document or instrument delivered in connection therewith. On the Effective Date, the Causes of Action shall be preserved and vested in the Reorganized Debtors for the benefit of the Reorganized Debtors. The Reorganized Debtors will have the right, in their sole and absolute discretion, to pursue, not pursue, enforce, file, settle, compromise, release, withdraw, arbitrate or litigate any Cause of Action without seeking any approval from the Court. Any net recovery obtained by the Reorganized Debtors from Causes of Action shall be retained by the Reorganized Debtors and distributed in accordance with the terms of the Plan.

41.    The Reorganized Debtors (a) may commence or continue in any appropriate court, tribunal or any other appropriate setting (e.g., American Arbitration Association or other arbitration association) any suit or other proceeding for the enforcement of any Cause of Action which the Debtors had or had power to assert immediately prior to the Effective Date, and (b) may settle or adjust such Cause of Action; provided, however, that from and after the Effective Date, the Reorganized Debtors shall be authorized to compromise and settle any Cause of Action or objection to a Claim upon approval by the Court after notice and a hearing.

42.    Before the Effective Date, any Debtor or any other party in interest will be entitled to object to any Claim (in whole or in part) or Equity Interest appearing on the Schedules, filed in the Chapter 11 Cases or estimated by the Court with respect to which the Debtors dispute liability in whole or in part. After the Effective Date, only the Reorganized Debtors shall be entitled to object to the allowance of any Claim or Equity Interest appearing on the Schedules, filed in the Chapter 11 Cases or estimated by the Court with respect to which the Reorganized Debtors dispute liability in whole or in part. All objections that are filed and prosecuted by the Debtors or the Reorganized Debtors, as the case may be, as provided herein shall be litigated to Final Order or settled. Unless otherwise provided in the Plan or ordered by the Court, all objections by the Debtors or the Reorganized Debtors, as the case may be, to Claims or Equity Interests shall be served and filed no later than one-hundred and eighty days after the Effective Date, or such other deadline established by separate order of the Court.

43.    After the Effective Date, the Reorganized Debtors may engage and pay, without further Court approval, counsel and other professionals of their choosing to represent them in connection with their duties under the Plan, including, without limitation, Berger Singerman LLP and Greenberg Traurig, P.A.

44.    Distributions to Holders of Allowed Claims shall be made pursuant to Article 7 of the Plan and in accordance with the Amended Proponent's Report. If a Claim is not an Allowed Claim as of the Distribution Date, distributions shall only be made if and when the Claim is Allowed pursuant to Article 8 of the Plan.

**Effect of Confirmation**

45.    Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind the Debtors, the Reorganized Debtors, the Sargeant

Parties, the Harry Parties, the Buyer, and any holder of a Claim against, or Equity Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

46.     Except as otherwise provided in the Plan, the APA or the other Plan Documents, the rights afforded in the Plan and the payments and Distributions to be made under the Plan shall discharge, satisfy and release all existing debts and Claims of any kind, nature, or description whatsoever, whether known or unknown, against the Debtors or Reorganized Debtors or any of their assets or properties to the fullest extent permitted by Section 1141 of the Bankruptcy Code. Except as provided in the Plan or in the APA and the other Plan Documents, upon the Effective Date, all existing Claims and debts of any kind against the Debtors or Reorganized Debtors shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims shall be precluded and enjoined from asserting against the Reorganized Debtors, their respective successors or assignees, or any of their respective assets or properties, any other or further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim, and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date. Upon the Effective Date, all such Persons shall be forever precluded and enjoined, pursuant to Section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against the Debtors. Except as otherwise provided in the Plan, the APA or the other Plan Documents, this Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors arising before the Effective Date. Nothing in this paragraph should

be interpreted as a discharge of the Debtors' or Reorganized Debtors' rights or obligations under the Plan.

47.    **Except as otherwise expressly provided in the Plan, the APA or other Plan Documents, all Persons who have held, hold or may hold Claims or Equity Interests and all Persons who have held, hold or may hold Claims or Causes of Action that have been released pursuant to Section 11.10 of the Plan or are subject to exculpation pursuant to Section 11.9 of the Plan, and all other parties in interest, along with their respective present or former employees, agents, officers, managers, directors, principals and Affiliates, are permanently enjoined, from and after the Effective Date, from (a) commencing, conducting or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest, or such released or exculpated claim or cause of action, against the Debtors, the Reorganized Debtors, or the Released Parties or any of their respective property or assets, including the Purchased Assets or any interest therein, (b) the enforcement, attachment, levying, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, the Reorganized Debtors, or the Released Parties or any of their respective property or assets, including the Purchased Assets or any interest therein, (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against the Debtors, the Reorganized Debtors, or the Released Parties or any of their respective property or assets including the Purchased Assets or any interest therein, or (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors, the Reorganized Debtors, the Released Parties or against any of their respective property or assets, including the Purchased Assets or any interest therein, with respect to any such Claim or Equity Interest, or such released or**

37

**exculpated claim or cause of action. Such injunction shall extend to any successors of the Released Parties and any Persons who are exculpated under the Plan and each of their respective properties and interest in properties, including the Purchased Assets.**

48.    Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, other than injunctions issued pursuant to the Plan (including injunctions under Section 11.6 of the Plan), shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

49.    Upon the entry of this Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, managers, directors, principals and Affiliates, shall be enjoined from taking any actions to interfere with the consummation of the Plan and closing of the APA.

50.    Notwithstanding anything in the Plan or this Confirmation Order to the contrary, as of the Effective Date, none of (a) the Debtors or the Reorganized Debtors, (b) the Buyer, (c) EFM, (d) the DIP Lender, (e) the Harry Release Parties, and (f) any Related Person of the Debtors, the Reorganized Debtors, the Buyer, EFM, the DIP Lender or the Harry Release Parties (but solely in their capacities as such) shall have or incur any liability for any claim, cause of action or other assertion of liability for any act taken or omitted to be taken in connection with, related to, or otherwise arising out of, the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, implementation, confirmation, consummation, or administration of the Plan, the Plan Documents, the APA or the Sargeant Settlement, property to be distributed under the Plan, or any other act or omission in connection with the Chapter 11 Cases, the Plan, the APA or the Sargeant Settlement or, in each case, any contract, instrument, document or other

agreement related thereto, including, but not limited to, the Plan Documents; provided, however, that the foregoing shall not affect the liability of any Person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order of a court of competent jurisdiction to have constituted willful misconduct or gross negligence; and provided, further, that each Released Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, the above-referenced documents, actions, or inactions.

51.    **As of the Effective Date, in consideration of the substantial contribution of the Buyer and EFM: (i) the Debtors or the Reorganized Debtors, and (ii) each holder of a Claim or Equity Interest that votes to accept the Plan, or accepts a Distribution under the Plan, or is deemed to accept the Plan, or abstains from voting on the Plan, shall release unconditionally and forever each Released Party from any and all Claims, demands, causes of action and the like, relating to the Debtors existing as of the Effective Date or thereafter arising from any act, omission, event or other occurrence that occurred on or prior to the Effective Date; provided, however, that nothing in this paragraph shall be construed as a release of any claims against any such Released Party resulting from an act or omission determined by a Final Order of a court of competent jurisdiction to have constituted willful misconduct or gross negligence, provided that each such Released Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, its actions or inactions.**

52.    **In consideration of the Sargeant Settlement, the Sargeant Parties (as defined in the Sargeant Settlement Agreement) shall release unconditionally and forever each Harry Release Party, and the Harry Parties (as defined in the Sargeant Settlement**

Agreement) shall release unconditionally and forever each Sargeant Release Party, from any and all Claims, demands, causes of action and the like, relating to the Debtors existing as of the Effective Date or thereafter arising from any act, omission, event or other occurrence that occurred on or prior to the Effective Date; provided, however, that such releases do not affect any obligation under the Sargeant Settlement, the Plan or this Confirmation Order.

53.     In consideration of the Sargeant Settlement and the transaction contemplated by the APA, the Harry Parties shall hereby release unconditionally and forever each of the Buyer, EFM and the DIP Lender and each of their respective Related Parties, and each of the Buyer, EFM and the DIP Lender shall hereby release unconditionally and forever each Harry Release Party, from any and all claims, demands, causes of action and the like, existing as of the Effective Date or thereafter arising from any act, omission, event or other occurrence that occurred on or prior to the Effective Date including without limitation in respect of the Debtors, the Purchased Assets or the Debtors' bankruptcy cases.

54.     Except as otherwise provided herein, nothing in the Plan or this Confirmation Order shall (i) effect a release of any other claim by the United States Government or any of its agencies or any state and local authority whatsoever against the Released Parties, including without limitation any claim arising under the Internal Revenue Code, securities laws, the environmental laws or any criminal laws of the United States or any state and local authority, (ii) enjoin the United States Government or any of its agencies or any state and local authority whatsoever from bringing any claim, suit, action or other proceedings against the Released Parties asserting any other liability, including without limitation any claim, suit or action arising

under the Internal Revenue Code, securities laws, environmental laws or any criminal laws of the United States or any state or local authority, and (iii) exculpate any of the Released Parties from any other liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, securities laws, environmental laws or any criminal laws of the United States or any state and local authority.

55.    Notwithstanding anything to the contrary set forth in the Plan, Sections 11.9 and 11.10 of the Plan shall not (i) be construed to release or exculpate any Person from, or require indemnification of any Person against, losses arising from, the fraud, malpractice, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or *ultra vires* acts of such Person, (ii) limit the liability of the professionals of the Debtors, the Reorganized Debtors, to their respective clients pursuant to Rule 4-1.8(f) of the Florida Rules of Professional Conduct, or (iii) release or otherwise diminish the obligations or liabilities of any party set forth in or arising under any provision of the APA, the Plan Support Agreement, the Plan, this Confirmation Order, or any other agreement or instrument contemplated by the Plan or the APA (or exculpate any party from any obligation or liability set forth in or arising under any provision of the APA, the Plan Support Agreement, the Plan, this Confirmation Order, or any other agreement or instrument contemplated by the Plan or the APA) (provided that the limitations on liability provisions set forth in the Plan Support Agreement and/or the APA shall remain in full force and effect).

**Retention of Jurisdiction**

56.    Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, pursuant to sections 1334 and 157 of title 28 of the United States Code, the Court

shall retain jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan, for the purposes of Sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, all matters set forth in Article XII of the Plan, to the fullest extent legally permissible. Nothing in this Confirmation Order or the Plan, however, shall operate to waive any argument by Berry GP, Inc. and Berry Contracting, LP d/b/a Bay, Ltd. that this Court lacks subject matter jurisdiction to adjudicate any dispute (other than an objection to claim) over the Dock Use Agreement.

### Statutory Fees

57.    Within ten days of the Confirmation Date, the Reorganized Debtors shall pay the U.S. Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6) for the relevant period and provide an appropriate affidavit indicating cash disbursements for the relevant period. Until the earlier of the closing of the Chapter 11 Cases by the issuance of a final decree by the Court, or upon entry of an order of the Court dismissing the applicable Chapter 11 Case, or converting the applicable Chapter 11 Case to another chapter under the Bankruptcy Code, and notwithstanding anything contained in the Plan or this Confirmation Order to the contrary, the Reorganized Debtors shall (i) pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time periods set forth in 28 U.S.C. § 1930(a)(6), and (ii) within 20 days of the end of each fiscal quarter, file with the Court and submit to the U.S. Trustee quarterly reports and affidavits setting forth all receipts and disbursements of the Reorganized Debtors as required by the U.S. Trustee guidelines.

### Approval of Settlements

58.    The settlements set forth in the Plan, including the Sargeant Settlement, each meet the requirements set forth in *In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir. 1990), and

42

Bankruptcy Rule 9019, and are **APPROVED**. The rights and benefits of the Sargent Settlement are expressly limited to parties thereto, and shall not inure to the benefit of nor be enforceable by any Person that is not a party to, or named beneficiary of, the Sargent Settlement, provided that nothing contained in the foregoing shall limit any provision of the Plan, the APA, the other Plan Documents or this Confirmation Order, or any Person's (including the Buyer's) rights thereunder or hereunder.

### General Provisions

59.     The failure specifically to include any particular provisions of the APA, any related agreements, or the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors, and the Buyer that the APA, any related agreements, and the Plan, are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Confirmation Order before the Closing Date.

60.     In the event of any conflict between the terms and provisions of this Confirmation Order, on the one hand, and the Plan and the Plan Documents, on the other hand, the terms and provisions of this Confirmation Order shall govern.

61.     Notwithstanding Bankruptcy Rule 3020(e), this Confirmation Order shall be immediately effective, subject to the terms and conditions of the Plan and the APA.

62.     The Reorganized Debtors shall serve a copy of this Confirmation Order upon all parties entitled to notice thereof pursuant to Bankruptcy Rule 3020(c) and Local Rules 2002-1(c)(11) and 3020-1(D), and shall file a certificate of service with the Court.

63.     Within one Business Day of the occurrence of the Effective Date, the Reorganized Debtors shall file with the Court a notice that the Effective Date has occurred.

64.     The Court shall conduct a post-confirmation status conference on **June 25, 2015 at 1:30 p.m. at the United States Bankruptcy Courthouse, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, Courtroom B, West Palm Beach, Florida, 33401**.

# # #

Submitted by:

Scott M. Grossman, Esq.
grossmansm@gtlaw.com
GREENBERG TRAURIG, P.A.
*Counsel to Debtors*
401 East Las Olas Blvd., Suite 2000
Fort Lauderdale, FL 33301
Telephone: (954) 765-0500
Facsimile: (954) 765-1477

*(Attorney Grossman is directed to serve a conformed copy of this Confirmation Order on all parties entitled to service and to file with the Court a Certificate of Service).*